Lateefa New appearing for Appellant, Kyle Forsyth appearing for Appellee. All right, good morning. Ms. New, would you like to reserve any time? Good morning. Yes, I'm going to reserve five minutes, please, Your Honor. All right. And as I said in the prior case, please keep an eye on the clock. Thank you. Shall I start? Yes, you may begin. Thank you very much. May it please the Court. My argument today will primarily focus on the following questions. Number one, whether the countervailing obligations of the Social Security Administration and Mr. Cooper flow from the same transaction or occurrence as required to establish an equitable right to recoupment. Number two, whether it would be inequitable to deny the right of recoupment to the agency. And finally, notwithstanding those tests and standards, whether recoupment can and should be an available remedy when the obligation in question is payment of a social entitlement such as Social Security disability benefits. So very briefly, to review the law, I know you've done that, but to get oriented, recoupment is an equitable remedy that seeks to resolve issues where the creditor and the debtor owe one another countervailing obligations. When recoupment is found to apply, it allows the creditor of the bankrupt debtor to enforce its debt, notwithstanding the protections of bankruptcy. It's for this reason that the Ninth Circuit recently wrote in Gardens Regional Hospital and Medical Center that care should be taken in applying the doctrine of recoupment in the bankruptcy context because improper application of the doctrine will undermine the fundamental purposes of bankruptcy stay and bankruptcy discharge protections. For recoupment to apply, the court must find that the countervailing obligations of the parties arose from the same transaction or occurrence, and the crucial factor in determining same transaction or occurrence is the existence of a logical, legal, and factual relationship between these claims. The countervailing obligations at issue here are, on one hand, the agency's claim against Mr. Cooper for repayment of the erroneously dispersed 2019 lump sum payment, and on the other hand, Mr. Cooper's current need for income replacement as a result of his current disability. Here, the logical relationship test fails for two reasons. First is the fact that in order to be eligible for disability benefits, Cooper was required not only to show that he had worked the requisite amount of time to be considered fully insured under the statute, but also to be found disabled. By statute, SSDI recipients have to receive a new finding of disability periodically. On that basis, his post-2019 determination or determinations eliminate the logical relationship between the 2019 overpayment and the current eligibility benefits. Let me ask you a question. Yes. You said the new finding of disability. It's not a new disability, though. It's the same disability. That's true. Yes. So, based on our argument or position that the new findings of disability create a new factual situation, I think this is comparable to the situation in California Canors and Growers, BAP case, where the court determined that a contract to supply goods was not subject to recoupment despite the parties having a detailed contract governed the terms under which goods would be supplied and paid for. Because different shipments of actual goods underlay the countervailing obligations of the parties, recoupment was not permitted. And this is consistent with… Okay. Yes. So, a different shipment of goods. Yes. But, you know, here we're dealing not with goods, but we're dealing with a disability. This is not a situation where there is one disability for a loss of a leg and later there was a disability for a loss of an eye, two different disabilities. It's the same disability going through here. That's true. So, if we're looking with disabilities on one hand and goods on another case, the other case didn't have the same goods. This case has the same disability. I think that the language in the SIMS case, Tennessee Hospitals, nonetheless provides guidance to the extent that the logical relationship test is not to be so loosely applied that multiple occurrences in any continuous commercial relationship would constitute one transaction. So, we definitely are arguing that one of the fault lines here is the requirement of renewed findings of disability. But in addition to that, the second fault line in the logical relationship test would be the mis-filing of the properly completed disclosure document of income supplied to the agency, which is not in dispute, which further distorts and breaks that logical relationship between the erroneous overpayment in 2019 and the current claim to benefits. I don't understand why that causes a rift for the logical relationship test. To me, it seems like that would be a reason for your client to have applied, once they got this determination that they had to pay back the money, for leniency or forgiveness or writing off the debt. That seems to really go in that direction rather than the logical relation test. Why does that cause a rift? It breaks the logical relationship because it was an intervening cause for the overpayment. Now, why Mr. Cooper chose to take this as a discharge violation matter rather than apply for a reduction of the offset, that information is not in my record. Is it too late for him to do that? I don't know, Your Honor. I hope not, depending how this goes. Can I ask a follow-up question in a little different direction? Yes. You speak of the ultimate determination of the logical relationship and whether the unfortunate filing is intervening to break that logical. Is that a factual question? Yes. I mean, I think it's a factual question, but there are no facts at issue. We have the facts clear in the record. And that goes to that second inquiry. Well, it also goes to the standard of review, right? So was Judge Barreca's determination that that was not intervening, given the totality of that? Is that factual due deference, or is that de novo? Everything I've seen on comparable cases suggests this is de novo. But those cases are largely on a summary judgment, aren't they? This arises in a little different context. So I think I'll answer you. Sorry. I think it's undisputed in the record, and as between myself or Cooper and the Social Security Administration, regarding when disclosures were made. And I believe it's the fact that in the oral ruling, the bankruptcy court did erroneously find that the correct submission was made in 2020. But, in fact, the record, and I believe everyone here is in agreement, that it occurred in May 2019. And I think that that goes to that equitable question, the second question we're covering here today, which is that the court should consider whether recoupment would be an equitable result. And this is that fact-driven inquiry. We have the 2017 incorrect filing, and then we have the 2019 correct filing with the assistance of an attorney, which was received. It's undisputed that that was received by the SSA via fax on or about May 1st, 2019, three months before that erroneous disbursement was made. And it's our position that that changes the equities entirely, because as we've seen in the responsive briefing, this is a complex statutory framework with complicated rules for calculation of benefits. And Mr. Cooper did everything he could well in advance of this erroneous disbursement to make sure that the determination would be accurate, and then it was out of his hands. And the fact that the intervening event of mishandling of that document causes him now to be facing recoupment of over $73,000 changes the equities and changes the logical factual relationship, in my opinion. And I think offers a basis to find that a determination would be appropriate that recoupment should not occur as to Mr. Cooper under these facts. Are there any other questions on that? Again, I guess I understand the argument, and I'm not unsympathetic to it, given the context, but that sounds far from de novo. I have a problem with saying there were mistakes made, and therefore there's essentially a basis that recoupment would be allowed, but the equitable nature of this is that the court should have and erroneously did not allow for those equities. I mean, I'm having trouble in aligning the standard to evaluate what Judge Barreca did. So, Your Honor, would suggest that it would be properly considered under a clear error? To discretion would seem to be more appropriate. I think the record is quite clear that the finding that the relevant disclosure was made in 2019, it's clear, it's not in dispute. I don't have a problem with that. Any exercise of equity, which is really what you were advocating in this part of it, would seem to lie in the discretion of the court rather than be de novo, meaning we could insert our view of what equity was in the first instance with no deference. And that's the problem. I understand, Your Honor. And I'll leave it at that. I don't have really an argument to make in response to that, but I appreciate your input. And I know I'm running out of time, so I'm just going to finish my third point that I wanted to cover here on my presentation in chief. And that is to raise the important argument that there are policy reasons to find that certain types of obligations simply should fall outside the scope of recruitment. We know that traditionally recruitment is a contractual remedy. We know that an express contract is not necessary, and that commercial relationships that are governed by statute, such as in TLC Hospitals, for instance, or Gardens Regional Medical Center, may be subject to recruitment. But there's not Ninth Circuit law that defines the outer limits of the applicability of recruitment. And this is where I look to Lee v. Schweiker, where the Third Circuit answered that question. And the agency correctly distinguishes Lee to the extent that the Third Circuit uses this different same transaction test. But we're not talking about the same transaction test. We're talking about a distinction here that's made in that case, where when the Third Circuit ruled that the social entitlement payments are simply not the same nature as contract or contract-like obligations appropriately resolved through recruitment. And the court briefly writes, we find this distinction persuasive. Social welfare payments, such as Social Security, are statutory entitlements rather than contractual rights. The purpose of these payments is to provide income to qualified individuals. And the Bankruptcy Code protects the debtor's future income from such claims once a petition has been filed. And the takeaway from that, Your Honors, is that this court can and should consider the implications of green-lighting a policy of recruitment against the Social Security disability benefits of bankrupt individuals. And that concludes my prepared statements, so I will stop for now. All right, thank you. Mr. Corsi? Thank you, Your Honor, and may it please the Court. This case presents a recruitment issue, and recruitment is proper in this case, and Ms. Manna should affirm Judge Barretta's decision because the facts of this case do fit within the logical relationship test that the Ninth Circuit has articulated in several cases, and most recently distilled in the Gardens Regional Hospital case in 2020, where it said that a logical relationship exists when there's a close factual and legal connection between the countervailing obligations. And here, that test is met because the 2019 overpayment of Social Security disability benefits is directly related to the Social Security Administration's efforts now to recruit the same overpayment from the very same screen of Social Security disability insurance benefits. Mr. Forsythe, let me question it. I had going through this. Let me ask at the outset here. In dealing with the logical relationship test, you know, looking at whether there's one transaction or occurrence, raised a question in my mind. Do you assert that the Social Security Administration would be able to recoup the overpayment of SSDI benefits from Mr. Cooper's Social Security old-age benefits? Thank you for that question, Your Honor. That's obviously a hypothetical situation in our context. The direct answer to your question is yes. I can explain why, but I'd also like to say that the Court does not need to reach that question in order to affirm Judge Barrett's decision here, because very clearly, the recruitment is happening from the same type of disability insurance benefits. The reason why recruitment would also extend to retirement benefits is that those retirement benefits, just like the disability insurance benefits, are earned benefits. They are based upon Mr. Cooper's work history, his entire life history with the Social Security Administration in terms of his employment, the payroll taxes that he's paid. And so you can't separate that pre-partition work history. Is that true? Why can't I separate it, or why can't a judge exercising this equitable doctrine say disability insurance benefits are paid as a result of an occurrence in a hypothetical situation? Somebody loses their leg and they can't operate the machinery that they operated in the past. That's one type of occurrence. But people are entitled to old-age benefits because over a 30-year period, they pay 7% of their income into a fund. That's a different occurrence. And it's a transaction. They receive those old-age retirement benefits in the same way that they receive the disability benefits. It's based upon their work history and the tax burden. But it's a different work history. It's a different occurrence. I mean, it comes out of maybe the same fund and from the same administration, but I don't see any cases that would extend this equitable doctrine of recruitment to cover such a transaction. I appreciate that, Your Honor. And I would just urge the Court to reserve that question. It's not one that's presented in this case and to affirm the correctness of statement. But it is a question we're ruling here is that I don't want, however we rule on this issue, to give carte blanche to something else that was not before us. I mean, maybe it's distinguishing what the issue was before us. The issue before us is whether or not you can recoup SSDI benefits. Yes. If that's a concern that the Court has, and obviously it is, one way to address that would be to expressly reserve that issue and to make clear that the panel is not deciding that question today. And, therefore, it would not give carte blanche in that instance. So, as I was arguing, the logical relationship test is met here and satisfied, both because of the close factual connection between the overpayment in 2019 and the recoupment today from the very same type of Social Security disability benefits. As Judge Corbett's question in the first half of the argument made clear, Mr. Cooper's disability has not changed. And the fact that there has been intervening confirmations that he still has the same disability and still qualifies, that's merely a confirmation of the status quo. It's not a change in events that would break that close factual connection. And as far as the legal connection goes, the Social Security Act expressly requires the Commissioner to consider the pre-petition overpayment when calculating Mr. Cooper's entitlement to ongoing monthly disability insurance benefits. That's in Section 4A of Title 42. And that's the legal connection that ties these two events together. Mr. Cooper relies heavily on the humble knee case from the Third Circuit. And I want to emphasize that the Ninth Circuit has expressly rejected the knee. And it's very narrow view of the same transaction test. And also, Mr. Cooper is relying on me not just for that, but for this essentially policy-based argument that we use to say that Social Security, social entitlement benefits are just out of bounds for recruitment. But that's not the rule that the Ninth Circuit has applied or this panel has applied. An example of that would be this panel's decision in the Williamson case from 2018. It's an unreported decision, but I think it provides persuasive authority. It was also affirmed by the Ninth Circuit on appeal. Also an unpublished decision. And in Williamson involved public pension benefits to a city worker. And in that case also, the city's plan, the plan administrator, very clearly made the mistake in that case. It was not the beneficiary's mistake, but it was the plan who was at fault in miscalculating the benefits that it should pay out. And despite that, the Ninth Circuit, that was affirmed by the Ninth Circuit held that recruitment applied in that situation. And the plan for recruitment from post-petition, post-discard benefit payments, the old payment that happened pre-petition. Another example comes from the Tenth Circuit in the Beaumont case. And that involved Veterans Affairs disability benefits. Clearly a similar type of benefit to the disability benefits at issue here. And the Tenth Circuit allowed recruitment in that instance for the VA to be able to recover an erroneous overpayment for disability benefits. So that holding in the Lee case really is an outlier. It's not one that controls here in the Ninth Circuit. And it was contrary to decisions of this court. As far as the equities go, I would just like to address that. As we argue in our brief, the equitable analysis really is tied up with the same transaction tax. It's part of that. And there are several examples. This court in Etna v. Madigan, at page 755, that decision says the obligation must be sufficiently interconnected so that it would be unjust to insist that one party fulfills its obligation without requiring the same of the other party. So stating that equity analysis, the equitable analysis, really doesn't extend beyond looking at the transaction itself and whether it is so closely intertwined that it's not fair to insist on getting the benefit on one hand and not fulfilling your obligation on the other. But Ms. New raised an equity issue in the brief and here at oral argument about the misfiling of the notice regarding the workers' compensation insurance. That seems to be tied to this transaction. She raises it as a break in the transaction occurrence change, but also on an equitable basis. And that seems to present an equity issue. So did the judge consider that? And how are we to review that going back to Judge Spraker's question regarding burden of proof on appeal? Yes, Your Honor. I think the NOVO is the proper standard of review. That's the standard of review that this court applied in Madigan and in Williamson. And I think because the facts are not disputed, they're disputed facts. Judge Brekker did not mention Mr. Cooper's submission. Why is that? So Madigan was a summary judgment. So it has to be no question of fact, and therefore it is legal. And you construe in favor of the opposition. That's the construct. Here the evidence is being presented ostensibly to Judge Brekker and given full leave to decide. Why do we get to reexamine that? The facts are the facts. They're undisputed. But the trier of facts gets to decide which one they accept within the context. Why is it the NOVO then? I think the question is whether Judge Brekker overlooked the fact that Mr. Cooper had submitted evidence that he received workers' compensation benefits. As to the equity, as to Judge Brand, because that really did not factor in. I mean, there was discussion at the very end of the transcript that there was a hope that leniency would be applied. But that's as much of a discussion of equity that appears in the record, I believe. Yes. And I think that what the court should do here is to decide the case of the NOVO in light of all of the undisputed facts, which includes both Mr. Cooper's submission of a false claim in May of 2017 that he was not receiving workers' compensation benefits, even though he had been receiving those for more than two years, since 2015. So we're supposed to resolve the equity issue. That decision, whether Judge Brekker's decision that it was equitable in this circumstance to apply this equitable doctrine of recruitment, that we're to decide that on a de novo basis? Are we supposed to give Judge Brekker some deference that he's making a factual determination? If not a factual determination about when the disability occurred or what statements have been filed, but factual under these circumstances, under these agreed facts, it would be equitable or not to allow the equitable doctrine of recruitment to be used? Sure. The equitable determination itself does invoke the bankruptcy judge's discretion. And so in that circumstance, you're not going to take part of the decision. It's important to remember, though, that Mr. Cooper's misrepresentation of his receipt of workers' compensation benefits really is the front door cause of the overpayment. And yes, he did submit on May 1st of 2019 evidence that he was receiving workers' compensation. Social Security had that information in the federal field office. A separate office in Richmond, California, two days later, made the determination that he should receive the lump sum, which included the $72,000 payment. And unfortunately, by the time that office in California disbursed the money to Mr. Cooper three months later, but still had not received the notice of his workers' compensation benefits. So there were errors on both sides, but Mr. Cooper is certainly not without fault. And I would again point back to this panel's decision in the Williamson case where the pension plan administrator was entirely at fault. The beneficiary submitted a correct statement of her annual income. The plan administrator misinterpreted that and thought she was referring to her monthly income, and as a consequence, overpaid her by 12 times the benefits that she was due. This panel still said recruitment is proper, and the Ninth Circuit affirmed that on appeal. I report she followed that, and I ask the court to affirm the bankruptcy court's decision here for final recruitment. Thank you. Thank you. All right. Ms. New, you've got two and a half minutes or so left, I think. There we go. Yep, about two and a half minutes. Great. Thanks, Your Honor. First off, the legal basis for collection is cited to the section 404 of 42 U.S.C., the Social Security Code, under 404A1A, as though this is an unstoppable leviathan of collection. I would encourage, Your Honors, if we're looking at section 404A1A, to scroll down to 404B, where, to paraphrase, there shall be no adjustment of payments if such adjustment would be against equity and good conscience. There's nothing unstoppable about this. This collection is much more mutable than is being presented by the position of the government. Second, distinguishing Williamson, and thank you for the opportunity to do so. The Williamson facts and law can be distinguished in some ways. Oops, I've lost you here. First of all, it sounds as though, let's see, there was a stronger link between the payments that were established at the point fixed of retirement. There was this time certain where benefits went into effect, and that is counter to what we're relying on, which is that this somewhat changed landscape in Cooper's situation where he had to be recertified for his disabilities. And it's our position that that would create, that would undermine the apparent, the superficial analogous situation here in Williamson. Similarly, this is more of a contract-like relationship. So to the extent I am arguing that contract-like relationships are more suitable for recoupment, that would be something like in Williamson as opposed to in Cooper. Finally, it does sound like Ms. Williamson was more involved in the erroneous determination based on the fact that she gave her income information to the pension administrator. Again, it's our position that the error here all goes back to the SSA mismanaging that document in May 2019. Finally, the equities analysis. It's not something that is embedded in transaction or occurrence. The Ninth Circuit in both Gardens and in Newberry specifically calls out the equitable analysis as being relevant to determination of the appropriateness of recoupment in a given situation. The facts as agreed, I think we're all on the same page that de novo is the appropriate review to that extent. Thank you very much, Your Honors, for listening today. All right. Thank you very much, both of you, for your good arguments. This matter will be submitted. We'll hope to get a decision out promptly. That's the end of the calendar. So, Madam Clerk, should I adjourn court or would you like to adjourn court? You may adjourn court or we may deem it adjourned. All right. It's adjourned. Thank you. Thank you.
judges: Brand, Spraker, and Corbit